DIERKS FORESTS *v.* SHELL, ASSESSOR

5-3907                                                      403 S. W. 2d 83

Opinion delivered May 30, 1966

*Watson, Ess, Marshall & Enggas,* Kansas City, Mo., *Wootton, Land & Matthews, Tom Walbert* and *Elbert Cook,* for appellant.

*Robert N. Hardin* and *Fred E. Briner,* for appellee.

GEORGE ROSE SMITH, Justice. This is a suit by the appellant, Dierks Forests, Inc., to enjoin the Saline County assessor, clerk,. and collector from assessing, levying, and collecting Dierks's 1965 real estate taxes upon the basis of an assessed value higher than that fixed by Dierks itself when it filed its 1965 assessment of its land in the county. The question is whether Dierks's own assessment was lawfully raised in time for the increased values to be used in the extension and collection of the 1965 taxes, payable in 1966. The chancellor, without reaching that substantive question, found that Dierks had neglected to pursue its remedy at law and that the increased assessment had therefore become final.

The controlling facts are not in dispute. On January 4, 1965, the county assessor and several local taxing units filed a request that the county court appoint professional appraisers to reappraise all taxable property in the county, pursuant to Act 351 of 1949. Ark. Stat. Ann. §§ 84-468 through 84-474 (Repl. 1960). The county court approved the proposal. On February 9 the Universal Land & Appraisal Company was employed to make the reappraisement. Universal agreed to complete its reappraisement by September 1 (subject to a daily penalty of $100 for delay) and to defend its work against complaints made within three years. In appraising the various tracts Universal was to use cards to be supplied by the county.

Dierks owned more than 700 parcels in Saline county, comprising 82,692.77 acres. On April 7 Dierks volun-

tarily assessed its lands at a total value of $496,180.00.

Universal had not finished its work on July 1—the date on which the county assessor must complete his assessments of real property. Ark. Stat. Ann. § 84-415. On July 30 the Assessment Coordination Department, an agency of the Public Service Commission, notified the assessor of Saline county that the county's ratio of assessed value to market value was below the state-wide standard fixed by the Department. Needless to say, the Department's comments were directed to the assessments already on the books and not to Universal's reappraisement, which was still in progress.

On August 5 the county assessor informed Dierks by telephone that the professional appraisers had completed their work as far as Dierks was concerned. At the assessor's suggestion Dierks sent a work party to Saline county to examine Universal's cards and to talk with its appraiser. It was eventually determined—apparently sometime in September—that the total Dierks assessment had been raised from $496,180.00 to $800,-730.00, an increase of $304.550.00. No written notice of an increase was ever given by the assessor, nor did Dierks file a petition for review with the county equalization board. On September 10 Dierks's president met with the equalization board to make what he refers to as an informal protest against the increase. The board refused to consider a reduction, stating that its members would stand upon Universal's reappraisal. It is evident that the board did not then have detailed information about Universal's evaluation of the 700-odd tracts owned by Dierks.

Meanwhile the county assessor was making up his assessment books by copying the valuations from Universal's cards. That work was not entirely complete by October 22, when the assessor filed his uncertified book of rural real property assessments with the county clerk. By then the present suit had already been filed, on October 2.

Broadly speaking, the parties' opposing conten-

tions are simple. Dierks insists that the attempt to raise its assessment came too late and would, if upheld, involve a denial of due process of law in that Dierks would have lost its right to a judicial review of the assessment. The county officials contend that even though the letter of the law was not obeyed there was such a substantial compliance that Dierks could and should have exhausted its remedy at law by appealing to the equalization board and then to the county court.

In our opinion the governing statutes provide an unmistakable answer to the question presented. To explain our conclusion, however, we must describe in some detail the two statutory methods by which assessed values may be raised. For convenience we may call the two methods (a) the tract-by-tract procedure and (b) the across-the-board procedure.

First, the tract-by-tract procedure. For many years this has been the usual method by which assessed values have been determined. Under this procedure the landowner may, though he is not required to, voluntarily assess his property between the first Monday in January and April 10. Section 84-414. Dierks followed that course, filing its assessment on April 7.

Whether or not a landowner assesses his property the county assessor must assess all real estate between the first Monday in January and July 1. Section 84-415. If the assessor raises the landowner's own assessment he must give written notice to the landowner and inform him that he may appeal to the equalization board not later than the third Monday in August. Section 84-437. Here the assessor neither assessed Dierks's property by July 1 nor gave Dierks written notice that its assessment had been increased.

Not later than the third Monday in August the landowner may petition the equalization board for a review of the assessment. Section 84-708. The board's regular session begins on August 1 and runs to September 1, but

to finish its work the board may remain in session until October 1. Section 84-706. An aggrieved landowner may file his appeal to the county court not later than the second Monday in October. Section 84-708.

The opportunity to appeal to the equalization board and thence to the courts is an essential part of the tract-by-tract procedure. Under the federal constitution the property owner is entitled at some point to notice and an opportunity to be heard on the fairness of his assessment, as compared with the assessment of other property. *McGregor* v. *Hogan,* 263 U. S. 234 (1923); *Londoner* v. *Denver,* 210 U. S. 373 (1908). Our law complies with the constitution by affording the landowner the necessary opportunity for a judicial review.

Second, the across-the-board procedure. This is not an annual routine method of assessing property. It is an exceptional step authorized by Act 153 of 1955. (Several sections of Act 153 were temporary and are published in the compiler's note to Ark. Stat. Ann. § 84-477).

Act 153 established a uniform state-wide system for the assessment of real and personal property. The system was intended to achieve an equal distribution of the tax burden, so that property in some counties would not be discriminated against by being assessed at a higher percentage of market value than property in other counties. Under Act 153 the Public Service Commission was directed to prepare manuals setting out a uniform system for the assessment of property. County assessors were required to obey the directions issued by the Public Service Commission. .

Act 153 took effect on March 7, 1955. It was plainly essential to a uniform state-wide assessment procedure that the plan be put into effect in all the counties. To that end the act required every county assessor to make a complete reassessment, in conformity with the manuals, as of January 1, 1957. That reassessment was to be completed, if possible, by the first Monday in June of

1957. If an assessor could not complete his reassessment by then he was given an additional year, the new assessment then being effective as of January 1, 1958. When the task had been finished the assessors were required to keep their assessments up to date by entering changes occasioned by the construction of improvements, the subdivision of acreage property, and the like. Section 84-475.

Section 12 of Act 153 put teeth into the new system. (That section is now a permanent law, compiled as Section 84-477 of the statutes.) It requires the Assessment Coordination Department to determine annually whether each county's ratio of total assessed value to total market value equals the minimum (originally 18%) fixed by the Department. If not, the Department must notify the county of its delinquency not later than August 1. If the county is to receive its full share of state turnback funds it must bring its assessments up to the state level.

It is at this point that the across-the-board procedure for raising assessments comes into play. Ordinarily, as we have seen, the equalization board completes its part of the tract-by-tract assessment procedure not later than October 1. If, however, the county is notified that its assessment ratio is too low the equalization board is given until the third Monday in November to effect an across-the-board increase. Sections 84-477 (C) and 84-706. That process is a simple one. All that needs to be done is for the board to raise all assessments alike by whatever percentage is needed to bring the county level up to the state-wide level.

The statute, for reasons that are obvious, does not give a landowner the right to appeal from an across-the-board increase in assessed values. Since the increase is not to be made by the assessor there is no occasion for an appeal from any decision of his to the equalization board. Nor is there any reason for the law to provide an appeal from the board's blanket increase in all assessments. Such an increase cannot involve a discrimination against a particular landowner, for everyone is treated

alike. If discrimination already exists the landowner had his remedy by appeal to the equalization board in the tract-by-tract assessment procedure.

We may end our discussion of the statutes by pointing out that the county's employment of professional appraisers has no direct bearing upon either assessment procedure. The expert appraisers may be employed at any time during the year. No date is fixed by statute for the completion of their work. The appraisers' report is not itself an assessment. It is merely an aid to the county assessor, who considers it in making his own final assessments. Section 84-468; *Strawn* v. *Campbell*, 226 Ark. 449, 291 S. W. 2d 508 (1956). Hence there is no need for the professional appraisers' report to fit into the statutory timetables governing assessment procedures.

We return to the particular issue presented by the case at bar. The source of the difficulty that arose in Saline county in August of 1965 becomes perfectly clear. The county assessor erroneously tried to work the professional appraisal into the 1965 tract-by-tract assessment procedure even though the appraisal became available much too late to be of use in that year. Doubtless the Assessment Coordination Department's letter of July 30, notifying the county that its assessment ratio was too low, contributed to the confusion. As we have shown, the board of equalization should have acted upon that letter by putting into effect an across-the-board increase in all assessments. Instead, the assessor attempted, without success, to meet the situation by fitting the professional appraisers' valuations into the tract-by-tract procedure. Under that procedure, however, the 1965 assessments of individual parcels had already become final.

There remains for discussion only the possibility that what happened amounted to a substantial compliance with the statutes governing tract-by-tract assess-

ments. It is at once apparent that the procedure actually followed was deficient in many material respects:

First: The assessor should have completed his assessment by July 1. As far as the increased valuations are concerned the assessment was not final until sometime after October 22, when the uncertified assessment books were filed.

Second: Dierks was entitled to written notice that its voluntary assessment had been raised. That notice was lacking.

Third: Dierks was entitled to an opportunity to appeal to the equalization board not later than the third Monday in August. It was denied that opportunity, because the assessor did not make the final assessments until months later.

Fourth: The equalization board's declared intention to accept the professional appraisal did not amount to a judicial review. The board could not have been acting as an appellate tribunal under the tract-by-tract procedure, for as yet there was no final assessment that could be reviewed. Nor could the board's attempted approval of the appraisal be treated as an across-the-board increase in assessments, for such an increase must apply in the same percentage to all existing assessments. That result did not attend the work of the expert appraisers, who were bound by their contract to make an independent appraisal of every tract of land in the county.

Fifth: Dierks had the right to appeal from the equalization board to the county court not later than the second Monday in October (Section 84-708) and thence, if need be, to the circuit court and to this court. That right was circumvented, because neither the assessor nor the equalization board had made a final appealable decision by the second Monday in October.

A defective execution of a statutory scheme cannot

974

amount to a substantial compliance with the law if the citizen's essential constitutional rights are disregarded. We are convinced that the actions taken by the assessor and the equalization board in August and September were so tentative, so inconclusive, that Dierks would have had no tenable basis on which to pursue its supposed remedy at law. Not until late in the month of October did the assessor commit himself to a firm approval of the advisory valuations submitted by Universal. We could not fairly say that Dierks lost its right to judicial review long before its grievance even came into existence.

Reversed.