STATE *ex rel.* THE WEST VIRGINIA BOARD OF EDUCATION,
*a Corporation*

*v.*

JACK L. MILLER, *Commissioner* OF FINANCE AND
ADMINISTRATION, STATE OF WEST VIRGINIA

(No. 12837)

Submitted July 1, 1969.          Decided July 22, 1969.

*George E. Lantz, William F. Carroll,* Assistant Attorneys General, for relator.

*Jackson, Kelly, Holt & O'Farrell, John L. McClaugherty, Louis S. Southworth II,* for respondent.

BERRY, JUDGE:

This proceeding in mandamus invoking the original jurisdiction of this Court was instituted by the petitioner, the West Virginia Board of Education, to require the respondent, Jack L. Miller, Commissioner of Finance and Administration, State of West Virginia, to consent to the amendment of petitioner's expenditure schedule for Marshall University, submitted to the respondent for the creation of a new position at Marshall University of "Director of Finance," fixing the annual and monthly salary to be paid and named the appointee and classification of said position.

On May 26, 1969 a rule was issued by this Court directing the respondent to show cause why a peremptory

writ of mandamus should not be awarded against him as prayed for by the petitioner. The matter was submitted for decision of this Court upon arguments and briefs on July 6, 1969.

This case grew out of a recommendation by the President of Marshall University to the petitioner that the position of Director of Finance of Marshall University be created, and that Joseph C. Peters be appointed to that position beginning March 25, 1969 at an annual salary of $18,504 and for $5008 for the remaining three and one-quarter months of the fiscal year. The petitioner approved the recommendation presented to it and the amended expenditure schedule in connection therewith was submitted to the respondent who refused to approve the amended schedule. The amended schedule proposed to transfer $5008 from the item of "extra help," leaving a balance of $995 in the item, contained in the original expenditure schedule which had been duly submitted and approved by the then Director of Finance and Administration at the time of its submission. The proposed expenditure was within the appropriation made by the legislature for the fiscal year 1968-69.

It is the contention of the petitioner in its petition that under the laws made and provided for in such cases it had the right and duty to employ such personnel and fix the salary therefor within the limits of the appropriation provided for such institution by the legislature of West Virginia, and that it was a ministerial duty of the respondent to consent to such employment and salary fixed by it, as set out in the amended schedule submitted to him, and prayed for this Court to award the writ of mandamus in accordance with the allegations contained in its petition and "otherwise as to your Honors may seem proper."

The respondent filed a demurrer and an answer to the petition in which he takes the position that he has the duty to either consent or refuse to consent to the proposed amended schedule of expenditure submitted by the

petitioner, and the question of whether he shall elect to consent or refuse to consent involves the exercise of discretion and not the performance of a ministerial duty, and therefore the exercise of such discretion can not be controlled by mandamus.

The reasons given by the respondent for his refusal to consent to the amended schedule of expenditure, which are contained in his answer, are that he compared the proposed salary for the proposed new position of Director of Finance with the salaries of other comparable positions in other state institutions of higher learning and that it was considerably higher in comparison therewith, as shown by an exhibit filed and made a part of his answer, and that the proposed salary was out of line with the salaries of comparable positions, and that in view of the lagging of state revenues the refusal to consent to the payment of the salary for the new position contained in the amended schedule was sound fiscal policy. He further stated that "* * * the respondent conferred with the Governor of the State of West Virginia concerning the proposed amendment of such expenditure schedule in light of the Governor's Executive Order No. 69-1, (sic) issued on January 16, 1969, which in effect ordered a job freeze on all new positions unless the position and salary therefor were approved by the Governor, * * *." However, it was also stated that "The Governor advised the respondent that he was in full accord with the respondent's decision to refuse to consent to the proposed amendment of the expenditure schedule in question, but he advised the respondent that so far as the Executive Order was concerned he had no objection to the respondent approving a proposed amendment of the expenditure schedule in question creating the position and establishing the salary at $15,000 per annum."

The exhibit attached to the answer comparing salaries indicates that business managers and comptrollers of state colleges are paid around $13,000 and that the only two positions involving salaries in which finances are specifi-

cally listed after the position are the Vice Presidents of West Virginia University and Marshall University who are paid $27,500 and $19,284 respectively.

It is not disputed that the petitioner had [until July 1, 1969 at which time it was replaced by the Board of Regents] absolute authority to determine the higher educational policies of the state, which includes Marshall University involved in this proceeding. Code, 18-2-5, as amended. The powers given to the petitioner in connection with the matter involved herein are clearly set out in Code, 18-2-13, as amended, and the pertinent provisions read as follows: *"The State board shall have general control, supervision and management of the business and educational affairs of Marshall College,* [now Marshall University. See Code, 18-2-13 (d), as amended] * * *. *The State board shall employ the president or principal, and the professors, teachers and other employees of each of the State educational institutions under its control and management, and shall fix the yearly or monthly salary to be paid to each person so employed."* (Emphasis supplied.)

It should be noted that Code, 5A-2-34, as amended, provides that the respondent, with the approval of the Governor, shall classify the offices and employments in the state government and its agencies, and shall establish uniform salaries and wage scales within each class except those institutions under the control of the State Board of Education.

The statute directly involved in a decision of this case is Code, 5A-2-15, as amended, which reads as follows:

> "The commissioner shall examine the expenditure schedule of each spending unit, and if he finds that it conforms to the appropriations made by the legislature, the requirements of this article, and is in accordance with sound fiscal policy, he shall approve the schedule.
>
> "The expenditure of the appropriations made to a spending unit shall be only in accordance with the approved expenditure unless the sched-

ule is amended with the consent of the commissioner, or unless appropriations are reduced in accordance with the provisions of sections twenty-two to twenty-five [§§5A-2-22 to 5A-2-25], inclusive, of this article."

It will be noted that the first paragraph of this section makes it mandatory for the Commissioner of Finance and Administration to approve the original expenditure schedule if it is within the appropriations made by the legislature for the spending unit, the requirements of law pertaining thereto, and is in accordance with sound fiscal policy. The second paragraph requires that the expenditure of the appropriations made by the legislature to a spending unit shall be in accordance with the approval of the expenditures in the first paragraph, unless the schedule is amended with the consent of the Commissioner, or unless the appropriations are reduced as provided in Code, 5A-2-22 through 25, as amended, inclusive.

All of the statutes referred to herein relating to the matters involved must be read together, especially the two paragraphs of the same section dealing specifically with the issue presented here. Code, 5A-2-15, as amended. *Owens-Illinois Glass Co.* v. *Battle, State Tax Commissioner,* 151 W. Va. 655, 154 S. E.2d 854. This principle is stated in the first point of the syllabus of the case of *Owens-Illinois Glass Co., supra,* in the following language: "Statutes relating to the same subject matter, whether enacted at the same time or at different times, and regardless of whether the later statute refers to the former statute, are to be read and applied together as a single statute the parts of which had been enacted at the same time." Therefore, the amended schedule of expenditure must be within the appropriations made by the legislature for the spending unit, in accordance with sound fiscal policy, and, in addition, have the approval or consent of the respondent. The original expenditure schedule with the item for additional help [the money item used for the payment of the salary of the new position created

in the amended schedule of expenditure] is within the appropriation made by the legislature for Marshall University and was found to be in accordance with sound fiscal policy by the respondent's predecessor when it was originally approved. The amended schedule of expenditure provided for in the second paragraph of section 15 must also be in accordance with sound fiscal policy and have the consent of the Commissioner of Finance and Administration before such expenditure provided for in the amended schedule can be expended.

Although we find that the consent provided for in this paragraph is discretionary on the part of the Commissioner, such discretion can not be abused and must be in good faith. See *Board of Education of Kanawha County v. Shafer,* 147 W. Va. 15, 124 S. E.2d 334; *Bookhart* v. *Central Electric Power Cooperative,* (S. C.) 72 S. E.2d 576. The reasons given and relied on by the respondent for the refusal to give his consent to the amended schedule of expenditure filed with him by the petitioner would not justify the refusal to consent in this case. The comparison of salaries would not appear to be justified because there does not appear to be one listed on the exhibit in the same category as that contained in the amended schedule of expenditure of "Director of Finance."

The reliance on the Governor's Executive Order No. 1, issued on January 16, 1969 would not warrant the refusal to give the consent in this instance. This Executive Order, with regard to expenditures, is directed to all departments of state government which share in the appropriating process and is not limited to departments or agencies under his direction or control, which would be in contravention of the separation of power clause in Article 5, section 1, of the State Constitution. It attempts to place a job freeze to prohibit the employment of any new personnel and to embargo all interdepartmental transfer of personnel in all state government agencies, regardless of previous authority for such personnel addi-

tions or transfers. This would appear to be an attempt to cancel any legally approved actions in connection therewith that had been previously made within the law made and provided therefor in all state governmental agencies or departments.

The provisions in Article 7, section 5 of the State Constitution providing that the Governor "* * * shall take care that the laws be faithfully executed," only requires him to see that the valid laws passed by the legislature are executed. *State ex rel. Miller* v. *Buchanan,* 24 W. Va. 362; *Shields* v. *Bennett,* 8 W. Va. 74.

The power to appropriate money is vested exclusively in the legislature. *State ex rel. Trent* v. *Sims,* 138 W. Va. 244, 77 S. E.2d 122. Under the amendment to Article 6, section 51 of the State Constitution known as the Modern Budget Amendment, implemented by Code, 5A-2-17 through 25, as amended, and as judicially interpreted, the Governor, in order to avoid a deficit in the general revenue fund, may instruct the Commissioner of Finance and Administration to reduce expenditures from the appropriations from the general fund, but not the appropriations, to the extent necessary to prevent an overdraft or deficit in the general fund. This reduction must be applied equally and pro rata to all appropriations out of general revenue in such manner as may be necessary to prevent an overdraft or deficit in the general fund. See *Board of Education of Wyoming County* v. *Board of Public Works,* 144 W. Va. 593, 109 S. E.2d 552. There was no determination by the Governor that any expenditures would create an overdraft or deficit in the general fund at any time in connection with the case at bar, and, therefore, no attempt was made to follow the statutory provisions granting such authority to the Governor.

The action on the part of the Governor wherein he approved the respondent's refusal to consent to the payment of $18,504 salary per annum for the new position of Director of Finance created at Marshall University and his lack of objection to the respondent approving

the salary of $15,000 per annum amounted to the fixing of the salary for the proposed new position created in the amended schedule of expenditure for which he had no authority under the laws of this state.

It is true that no amendment to the expenditure schedule was ever submitted for the lesser amount as to which the Governor indicated he had no objection to the payment thereof, and none would be filed by the petitioner unless it agreed with the Governor and with the respondent's fixing the salary at the lesser amount. If the proposed $18,504 per annum salary was not sound fiscal policy, the main reason for the refusal to consent in such instance under the provisions of the statute, certainly $15,000 would not be sound fiscal policy as there is only $3504 difference. Therefore, if the payment of the $15,000 salary was considered sound fiscal policy by the Governor and the respondent, which by necessity would have to be sound fiscal policy to justify consent thereto, the payment of the $18,504 would also be within sound fiscal policy because of the small difference between the two amounts. This alone would indicate that the exercise of the discretion vested in the respondent in this instance was arbitrary or capricious.

It is true that mandamus will not ordinarily lie to control the performance of a discretion on the part of an administrative or executive office but it has been repeatedly held that when the act of such officer is capricious or arbitrary or under the misapprehension of law on the part of such officer the exercise of discretion may be controlled by mandamus. *Dillon* v. *Bare and Carter*, 60 W. Va. 483, 56 S. E. 390; *State ex rel. Noyes* v. *Lane*, 89 W. Va. 744, 110 S. E. 180; *State ex rel. Hoffman* v. *Town of Clendenin*, 92 W. Va. 618, 115 S. E. 583; *Beverly Grill, Inc.* v. *Crow*, 133 W. Va. 214, 57 S. E.2d 244. The case of *Beverly Grill, Inc.* v. *Crow, supra,* is quite similar to the case at bar. The respondent in that case gave reasons for the refusal to grant a beer license which necessitated a discretionary act on his part. The reasons given were based on objections or protests of certain

residents. It was held that the petitioner had complied with the requirements therefor and such reasons were not justified by law and could not receive judicial approval. The writ of mandamus was awarded in that case and in the only syllabus point of that case it was held: "Mandamus lies to control the action of an administrative officer in the exercise of his discretion when such action is arbitrary or capricious."

The respondent relies on the case of *Hockman* v. *Tucker County Court,* 138 W. Va. 132, 75 S. E.2d 82, which was an original proceeding in mandamus in this Court to compel the county court to consent to the appointment by the sheriff of a deputy sheriff and this Court held that mandamus did not lie to compel the county court to consent to such appointment. There was no question raised with regard to the payment of salary, and, in fact, the deputy was paid for his services in that case. The only question involved in such case is the consent to the appointment, such as the approval of the Senate to the appointments of the Governor. If the salaries fixed by the sheriff are within the appropriations contained in the budget and approved by the county court the payment of such salaries can not be questioned. See *State ex rel. Christian* v. *St. Clair,* 153 W. Va. 1, 166 S. E. 2d 785. (Decided by this Court March 4, 1969.)

In the case at bar the respondent raises no objection to the appointment of Joseph C. Peters as Director of Finance for Marshall University, and in effect admits the right of the petitioner under the law to make such appointment without the right of any objection on his part.

Inasmuch as it appears that the action of the respondent in refusing to consent to the amended schedule of expenditure filed by the petitioner in the instant case was arbitrary and capricious, it is subject to control by mandamus. Therefore, the demurrer filed by the respondent is overruled and the writ prayed for is awarded.

*Writ awarded.*