CONSOLIDATION COAL COMPANY

*v.*

J. DONALD KRUPICA, *et al.*

(No. 14450)

Decided May 15, 1979.

*Phillips, Marshall, Gardill & Hazlett, John Marshall III, James C. Gardill and Paul T. Boos* for petitioner.

*Preiser & Wilson, Stanley E. Preiser and L. Alvin Hunt* for respondents.

MILLER, JUSTICE:

This original proceeding in mandamus presents the question of whether, under W. Va. Code, 11-3-24, a taxpayer's objection to a proposed increased real property assessment is timely if he lodges it after the county commission[1] has officially adjourned, but during business hours on the first day of the commission's term as a board of review and equalization. This action arises out of the refusal of the respondent, the County Commission of Marshall County [hereinafter Commission], to entertain the objection of the petitioner, Consolidation Coal Company [hereinafter Consolidation], to an increased assessment made by the County Assessor with respect to certain coal lands owned by Consolidation.[2]

The operative facts are not in dispute. On January 24, 1979, the Assessor notified Consolidation that the assessed value of the coal lands would be $10.00 per acre. On January 30, 1979, the Assessor informed Consolidation that the assessment for such property would be $100 per acre. It is unclear what the assessment had been prior to January, 1979, but it is undisputed that the $100-per-acre value represented an increase.[3]

---

[1]As a result of the Judicial Reorganization Amendment, Article IX, Section 9 of the West Virginia Constitution, the county courts have been renamed county commissions, and we use this latter designation notwithstanding the references to county courts in W. Va. Code, 11-3-24.

[2]The relevant portion of W. Va. Code, 11-3-24, in regard to the taxpayer's right to protest his assessment, is:

"If any person fails to apply for relief at this meeting, he shall have waived his right to ask for correction in his assessment list for the current year, and shall not thereafter be permitted to question the correctness of his list as finally fixed by the county court, except on appeal to the circuit court. ..."

[3]By letter from its regional engineer, Consolidation had furnished an opinion that, based upon core samples, its Sewickley coal

On February 1, 1979, pursuant to statute, the Commission convened its session as a board of review and equalization.[4] Notice of the session was given all taxpayers by publication in a local newspaper on January 5 and 12.[5] This advertisement provided that advance notice of the taxpayer's objection must be filed:

"Notice is hereby given that the County Commission of Marshall County (In compliance with Chapter II, Article 3, Sec. 24, the Code of West Virginia) will sit as a Board of Review and Equalization for the County of Marshall, State of West Virginia, in the County Commission room of the Marshall County Court House on the following date:

"Thursday, February 1, 1979, 10:00 o'clock A.M., and such times thereafter, as the County Commission may determine. Adjournment thereof, may be made by oral proclamation of the County Commission.

"Notice of appearance and a detailed written statement reflecting the nature of the taxpayer's complaint or objection, should be given on or before January 25, 1979, to Ralph Mikasen, Administrative Assistant, Marshall County Commission, Court House, Moundsville."

Because Consolidation was not notified of the $100-an-acre assessment until January 30, it was impossible for

---

seam in Marshall County was not mineable, and contended in its objection to the assessment that this property was worth only $5.00 an acre.

[4]"The county court shall annually, not later than the first day of February, meet for the purpose of reviewing and equalizing the assessment made by the assessor. ..." W. Va. Code, 11-3-24.

[5]"The clerk of the county court shall publish notice of the time, place and general purpose of the meeting as a Class II legal advertisement in compliance with the provisions of article three, chapter fifty-nine of this Code, and the publication area for such publication shall be the county involved. ..." W. Va. Code, 11-3-24.

it to furnish the required notice and statement of objection by January 25, and the Commission does not seriously contend otherwise.[6]

On February 1, the first day of its term, the Commission convened at the appointed time of 10:00 a.m., received three taxpayer objections, inquired if there were other objections, and adjourned at 11:45 a.m. At 3:35 p.m. that day the Commission entered an order foreclosing all other objections. At 3:45 p.m., Consolidation appeared to file its objection, but the Commission was not in session. Consequently, Consolidation filed its written objection with the County Clerk. The Commission deemed this objection untimely because it was filed after adjournment and entry of the order foreclosing further objections.

The narrow question before us is whether the foreclosure of the objection was valid under W. Va. Code, 11-3-24, which basically governs the procedure of review and equalization before county commissions.

We begin by recognizing that W. Va. Code, 11-3-24, provides a county commission acting as a board of review and equalization with a term of short duration. The statute fixes February 1 as the latest time when the term may commence, and further states that the county commission "shall not adjourn for longer than three days at a time until this work is completed, and shall not remain in session for a longer period than twenty-eight days."

The purpose of limiting the term to such a brief span was stated in the early case of *West Virginia National Bank v. Spencer*, 71 W. Va. 678, 682, 77 S.E. 269, 270 (1913):

"The statute in this particular is a wholesome one, meant to so settle and foreclose questions in

---

[6]Consolidation does not raise any issue as to the County Commission's authority to require advanced filing of objections to the assessment and we, therefore, do not pass on this point.

relation to assessments that, when the books are completed and collection begins, the matters of public revenue will not be interfered with or retarded."

*See* Annot., 105 A.L.R. 624 (1936).

We have not found nor are we cited any direct holding by this Court on what constitutes a timely filing. In *West Virginia National Bank v. Spencer, supra,* the taxpayers sought relief in equity against a claimed erroneous assessment of bank stock, but were denied relief on the ground that they had failed to contest the assessment before the county commission. This Court, without any elaboration, cited the forerunner of W. Va. Code, 11-3-24, which contained language almost identical to that contained in the present section:

"If any person fail to apply for relief at said meeting he shall be deemed to have waived his right to ask for correction in his assessment list ...." [71 W. Va. at 683, 77 S.E. at 271]

The later case of *In re Morgan Hotel Corp.,* 151 W. Va. 357, 151 S.E.2d 676 (1966), reveals that the taxpayer filed an objection to his assessment on February 25. This Court, again without any discussion of the timeliness of the initial objection, proceeded to rule on the merits of the appeal.

When we consider in its entirety W. Va. Code, 11-3-24, together with its related section, W. Va. Code, 11-3-24a, it appears that the Legislature did not intend to limit the right of the taxpayer to protest to a narrow time period on the first day the county commission meets.

W. Va. Code, 11-3-24, begins with the requirement that "[a]t the first meeting, the assessor shall submit the property books ...." It goes on to state that "[t]he court [commission] shall proceed to examine and review the property books," and charges the commission with the duty of adding omitted names and property values. The

commission is required to correct all errors in names of property owners and in the description and value of their property. The commission is further required to do "whatever else may be necessary to make the valuation comply with the provisions of this chapter."

These are clearly administrative functions which are designed to monitor the accuracy of the assessor's performance. It is apparent that these administrative operations precede the hearing of any objections by taxpayers, and this framework suggests that these operations be carried out in advance of receiving objections.

W. Va. Code, 11-3-24, further empowers the county commission to alter assessments made by the assessor which do not reflect the true and actual value of the property. However, where the county commission increases the assessment, the property owner must be given at least five days' notice in writing of the intention to make the increase. In this situation the taxpayer obviously cannot protest the increase until he has been notified of it.

It is equally apparent that the statutory language which bars objection to an increase, "[i]f any person fails to apply for relief at *this meeting* ...." [emphasis supplied], cannot be construed to mean the initial meeting of the county commission. To so hold would produce the absurd result of permitting the county commission to increase an assessment at its first meeting, send the required notice to the taxpayer of the proposed increase, but, when the taxpayer appeared later to object, hold him barred because he did not object at the first meeting.

When we look to W. Va. Code, 11-3-24a, which relates to the contesting of matters regarding the classification and taxability of property, we note that these issues may be raised "[a]t any time after property is returned for taxation and up to and including the time the property books are before the county court for equalization

and review . . . ." Certainly, these issues parallel questions of valuation in importance. In light of the liberal protest provisions in this section, it would be incongruous to construe W. Va. Code, 11-3-24, as enabling the county commission to set a specific time on its initial meeting day for the taxpayer to file objections or otherwise be forever barred from contesting his increased assessment.

Finally, there is the historic rule that tax statutes are generally to be construed in favor of the taxpayer and against the taxing authority. *Wooddell v. Dailey*, ____ W. Va. ____, 230 S.E.2d 466 (1976); *In re Estate of Evans*, 156 W. Va. 425, 194 S.E.2d 379 (1973); *Baton Coal Co. v. Battle*, 151 W. Va. 519, 153 S.E.2d 522 (1967).

We thus conclude that the phrase "to apply for relief at this meeting" in W. Va. Code, 11-3-24, is ambiguous, but that it does not mean that the county commission can confine the taxpayer's right to protest an assessment to a stated period on the initial day the commission meets to review and equalize assessments.

When we turn to other jurisdictions, we find it generally established that where the governing statute is silent, or ambiguous, as to a time period for filing objections, the taxpayer must be given a reasonable time to file. *Schluderberg v. Mayor and City Council*, 151 Md. 603, 135 A. 412 (1926); *Township of Caledonia v. Rose*, 94 Mich. 216, 53 N.W. 927 (1892); *Vanadium Corp. v. Board of Assessors*, 50 Misc. 2d 570, 270 N.Y.S.2d 919 (Sup. Ct. 1966); *In re Cathedral of the Incarnation*, 91 A.D. 543, 86 N.Y.S. 900 (1904).

In *Schluderberg, supra,* the Maryland court construed a statute that simply provided for "a system for hearings on petitions filed before it, and . . . such rules of proceedings, manner of taking testimony and argument and such regulations in regard to notices of assessment, hearings and appeals as [the state tax commission] may deem proper." The court held that this general scheme

necessarily contemplated both reasonable notice to the taxpayer and a reasonable time within which he could file objections:

> "It will be seen from the provisions of the statute above quoted that the State Tax Commission is given exclusive power and authority to assess the personal property of an ordinary business corporation; also that it has power and authority to adopt such rules and regulations in regard to notices of assessment, hearings and appeals as it may deem proper, the only limitation being that the notice given to the taxpayer afford him reasonable and proper time to protest the assessment. The time given in this case was ten days, which apparently is the usual time inserted in notices to taxpayers where the assessment has been made by the commission, and which affords the taxpayer ample time to make protest to the State Tax Commission against the assessment as made." [151 Md. at 610, 135 A. at 414]

*Township of Caledonia v. Rose, supra,* involved a statute requiring the township board of review to meet on the fourth Monday in May. Instead of meeting on that day, the board met during the week preceding the fourth Monday and then adjourned *sine die.* The Michigan court held in rather broad language that the board's action deprived the taxpayer of a fair opportunity to be heard:

> "This board of review is a tribunal provided by law, in which the tax-payer may appear to contest an unequal or excessive assessment. Failing to appear there, he is estopped to assail the assessment afterwards. . . .

> "Defendant was therefore entitled to his 'day in court' before that tribunal. The provision of the statute requiring the board to meet upon the days named is mandatory, and it cannot deprive the tax-payer of his hearing there, and thereby force him to a suit at law to obtain redress. Defendant was entitled to assume that the board

would remain in session the full length of time provided by the statute . . . ." [94 Mich. at 218, 53 N.W. at 928]

In *Vanadium Corp. v. Board of Assessors, supra,* the court interpreted the "grievance day" provisions of the New York tax assessment statute. Those provisions simply stated that the board shall "meet *at the time and place specified in [the] notice*" to "hear and determine *all complaints* in relation to such assessments brought before them, and for that purpose they may adjourn from time to time." [Emphasis in original] [50 Misc. 2d at , 270 N.Y.S.2d at 920] In holding that the taxpayer filed an untimely complaint, the court emphasized that he did not appear at the appointed place during regular business hours:

> "Looking at the facts most beneficial to the [taxpayer], the Court does not view the protest on the 1959 assessment timely or properly filed. The plant manager arrived after what would be considered normal public business hours, found no meeting in session, located one of the officials by phone, presented the protest to him who accepted it with certain limiting remarks. The Board evidently had not adjourned to another specific date nor is there any record of any one formally requesting and obtaining an adjourned date. For all practical purposes the meeting had been concluded." [50 Misc. 2d at , 270 N.Y.S.2d at 921]

*In re Cathedral of the Incarnation, supra,* concerned an earlier New York assessment law that was similarly silent, or ambiguous, as to the time for filing a protest. The board of assessors issued a notice fixing August 18 as "the first day upon which objections [to the assessments] would be heard." The taxpayer appeared the next day, August 19, to protest, and the board deemed the protest untimely.

Reversing the board, the court held the complaint timely on two grounds. First, the statute said nothing about the time for filing:

"Section 250 of the Tax Law does not prescribe that the application must be made on the first day named in the notice, or on the third Tuesday of August, or on any specified day. It reads: 'Such petition must show that application has been made in due time to the proper officers to correct such assessment.' As August eighteenth was the earliest day when such application could be made (§ 35), it cannot be presumed that an application made on August nineteenth was not made in due time so far as the opportunity for hearing and correction is concerned. ... By the statute the third Tuesday of August is simply made the day when the assessors will meet 'to review their assessments.' (§ 35.) There is no provision of the law that complaints must be made upon that day or be forever barred, while section 36 prescribes that the assessors shall meet at that time and at the place specified in the notice of completion of the assessment roll to *hear and determine* all complaints, and *for that purpose* may adjourn from time to time. ..." [91 A.D. at 545, 86 N.Y.S. at 901–902]

Second, the wording of the board's notice was ambiguous enough to be misleading:

"[I]f the notice fixed August eighteenth as the *first* day, then the petitioner, aside from any question of statutory assurance, in view of the provisions of section 36 (*supra*), and of the absence of specific day designated by statute, was lulled to sleep by the form of the notice. ..." [91 A.D. at 547, 86 N.Y.S. at 903] [Emphasis in original]

The reasoning of these cases is analogous to that of the present case. Our statute is at best ambiguous as to the time for filing objections to increased assessments. In the absence of statutory proscription, the Commission's notice had to furnish reasonable time. The notice did not state that objections had to be filed at 10:00 a.m. on Thursday, February 1, but merely provided that the

Commission would initially sit at that time and at "such times thereafter as the County Commission may determine. ...." There was nothing in the notice that indicated when the Commission would adjourn its meeting on the first day. Therefore, it would not have been unreasonable for the taxpayer to have assumed he could appear anytime during the regular business hours of February 1, for the taxpayer cannot be charged with knowledge of a particular adjournment time.

We conclude that a proper interpretation of W. Va. Code, 11-3-24, permits a taxpayer a reasonable time from the opening of the county commission's term as a board of review and equalization to file his objection to his property tax assessment. We base this conclusion not only on the foregoing legal analysis, but on the practical consideration that in this era of rising taxes and inflation there are those small businessmen and homeowners who may wish to contest the correctness of their property assessments. These individuals may not be able to afford legal assistance and should not be unduly hampered by a narrow and constrictive interpretation of a tax statute designed to afford them relief.

In this case, we need not survey the outer boundaries of what would be a reasonable time period for the filing of an objection to a tax assessment. Here, the taxpayer filed during normal business hours on the first day the Commission met. Clearly, such filing was timely.[7]

---

[7] Obviously legislative clarification would be beneficial in this area, as illustrated by the following cases where the courts dealt with specific statutory periods for filing objections to assessments. *Dierks Forests v. Shell*, 240 Ark. 966, 403 S.W.2d 83 (1966) (July 1 to third Monday in August); *Tift v. Tift County Board of Tax Assessors*, 234 Ga. 155, 215 S.E.2d 3 (1975) (twenty-day period); *Warlick v. Supervisor of Assessments*, 272 Md. 540, 325 A.2d 587 (1974) (twenty days); *Brock v. North Carolina Property Tax Commission*, 290 N.C. 731, 228 S.E.2d 254 (1976) (thirty days). A filing of protest near the end of the statutory term would obviously be untimely, since it would prevent the county commission and assessor from having sufficient time to perform their duties in regard to the contested assessment in an orderly manner. *Cf. 700 Shore Road Associates v.*

The remaining issue is whether mandamus is the proper remedy. It is well established that mandamus will lie to require the discharge by administrative agencies of nondiscretionary duties and to control arbitrary action by them. *E.g., State ex rel. Anderson v. Board of Education,* ____ W. Va. ____, 233 S.E.2d 703 (1977); *State ex rel. West Virginia Board of Education v. Miller,* 153 W. Va. 414, 168 S.E.2d 820 (1969); *State ex rel. Allstate Insurance Co. v. Union Public Service District,* 151 W. Va. 207, 151 S.E.2d 102 (1966). Here, the Commission had a nondiscretionary duty to permit Consolidation to file its objection to the increased assessment. Mandamus therefore lies to compel it to perform this duty.

*Writ awarded.*

Board of Assessment Review, 70 Misc. 2d 822, 335 N.Y.S.2d 114 (Sup. Ct. 1972).